+

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KATHLEEN MURPHY,

        Plaintiff,                 No. 2:13-CV-0412-CMK

     v.

SHASTA COMMUNITY HEALTH
CENTER, et al.,

        Defendants.               <u>ORDER</u>
_____/

        Plaintiff, proceeding with retained counsel, brings this civil action.  Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending before the court is defendants' motion to dismiss plaintiff's individual claims against defendant Glasco (Doc. 7).  The hearing on the motion was taken off calendar pursuant to Local Rule 230(g).

        **I.  Background**

        Plaintiffs bring this action alleging sexual harassment, retaliation, and wrongful termination in violation of Title VII of the Civil Rights Act of 1964 and California's  Fair Employment and Housing Act.  Plaintiff claims that while working for defendant Shasta Community Heath Center, defendant Sand engaged in sexual harassment of plaintiff as well as

1

other employees and patients.  She sets forth in her complaint the conduct defendant Sand

engaged in, including the use of offensive verbal harassment and inappropriate touching.

Plaintiff alleges that she informed the HIS Director, whom she believes informed defendant

Glasco, the Chief Operating Officer.  Defendant Glasco then interviewed plaintiff as to her

allegations of sexual harassment.  Following that meeting with defendant Glasco, plaintiff alleges

a campaign of retaliatory harassment against her began.  The retaliatory harassment alleged

includes the following:

(a) On June 12, 2012 the CEO, Dean Germano and COO Glasco attended the HOPE meeting.  Germano addressed the whole team stating that he was "very disappointed with our team (HOPE) that if we did not like our supervisor (SAND) we could transfer departments or quit".  GLASCO then addressed the team stating that SAND had something to say to everyone and that "we" (apparently referring to administration) support him.  At that time SAND got up, denied any sexual allegations in an uncomfortable manner and named the registered nurse who was at the center of the allegations and in the room at the time.  Plaintiff, and to Plaintiff's knowledge, the other employees, took from this meeting that the administration meant to stand by SAND and that this was a means of intimidation against any further complaints against him.

(b) On June 13 or June 14 Plaintiff's computer was taken from her allegedly for "routine service."  Plaintiff is informed and believes that it was taken so that the contents could be examined to see if anything could be filed against Plaintiff.

(c) On June 14, 2012, Plaintiff was given a written warning for the very first time in her employment.  It was signed by GLASCO, who is not in Plaintiff's line of reporting supervision, accusing Plaintiff of something Plaintiff did not do.

(d) On June 20 Plaintiff emailed my immediate supervisor, Charles Kitzman for help but Kitzman never responded.  Then the following day, June 21, 2012, Plaintiff was summoned to administration to be interviewed by an attorney hired by SHASTA to look into the sexual harassment allegations.  Plaintiff honestly answered all of the questions to the best of Plaintiff's knowledge and ability.

(e) On the following day, June 25, Plaintiff was called out of clinic and given an annual performance evaluation by her supervisor Kitzman.  This had not been scheduled and was unplanned as far as Plaintiff knew.  In the evaluation Kitzman made complaints that had never been previously brought to plaintiff's attention and which were untrue.

(f) On June 27, 2012 Plaintiff was given a second written warning, based on false allegations.

1
2
3

  (g)  On July 5 Plaintiff was informed by HR that she was being
placed on paid administrative leave until the "investigation of Dr.
SAND was concluded".
  (h)  On July 10, 2012 Plaintiff was notified by HR that her position
was being terminated due to "her performance".

4 (Compl., Doc. 1, at 5-6).  Plaintiff alleges this retaliatory harassment created an abusive and

5 hostile work environment, as well as retaliatory termination.

6       **II.  Motion to Dismiss**

7    Defendants bring the motion to dismiss on the grounds that plaintiff cannot

8 maintain a suit against defendant Glasco individually because retaliation claims against

9 individual supervisors are not permitted under either statute, and plaintiff fails to plead sufficient

10 facts to state a claim regardless.

11    In opposition to the motion, plaintiff argues that evidence of retaliatory conduct

12 may be used to support a hostile environment harassment claim, and that the facts alleged are

13 sufficient to state a claim for retaliatory harassment.

14       **III.  Discussion**

15   A.  Standards

16    In considering a motion to dismiss, the court must accept all allegations of

17 material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The

18 court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer

19 v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S.

20 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All

21 ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen,

22 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual

23 factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50

24 (2009).

25    Rule 8(a)(2) requires only "a short and plain statement of the claim showing that

26 the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is

1    and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007)

2    (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for

3    failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic

4    recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to

5    raise a right to relief above the speculative level." Id. at 555-56.  The complaint must contain

6    "enough facts to state a claim to relief that is plausible on its face." Id.  at 570.  "A claim has

7    facial plausibility when the plaintiff pleads factual content that allows the court to draw the

8    reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at

9    1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more

10   than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S.

11   at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability,

12   it 'stops short of the line between possibility and plausibility for entitlement to relief." Id.

13   (quoting Twombly, 550 U.S. at 557).

14           In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

15   outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

16   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1)

17   documents whose contents are alleged in or attached to the complaint and whose authenticity no

18   party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

19   and upon which the complaint necessarily relies, but which are not attached to the complaint, see

20   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

21   of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

22   1994).

23           Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

24   amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

25   curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

26   / / /

B.    <u>Motion</u>

Defendants argue the claims against defendant Glasco should be dismissed for two reasons.  First, plaintiff cannot maintain a claim against defendant Glasco individually under either FEHA or Title VII for retaliation.  Second, even if an individual supervisor could be liable for retaliation, plaintiff fails to plead sufficient facts to state a claim.

1.    <u>Title VII</u>

Title VII of the Civil Rights of 1964 Act, 42 U.S.C. § 2000e *et seq.*, outlaws discrimination in employment in any business on the basis of race, color, religion, sex or national origin.  It also prohibits retaliation against employees who oppose such unlawful discrimination. The Ninth Circuit has made it clear that under Title VII, there is no personal liability for employees, including supervisors.  The Court specifically stated, "[t]here is no reason to stretch the liability of individual employees beyond the respondeat superior principle intended by Congress." <u>Miller v. Maxells' Intern. Inc.</u>, 99 F.2d 583, 587-88 (9th Cir. 1993).  <u>See also</u> <u>Padway v. Palches</u>, 665 F.2d 956, 968 (9th Cir. 1982).

Here, plaintiff's claims in her third cause of action for retaliatory harassment under Title VII against defendant Glasco, as an individual supervisor, can therefore not be maintained, and the motion to dismiss those claims should be granted.

2.    <u>FEHA</u>

California Fair Employment and Housing Act, codified at § 12900 *et seq.* of the Government Code is a similar antidiscrimination statute.  FEHA identifies specific unlawful employment practices, including discrimination (§ 12940(a)), retaliation (§ 12940(h)), and harassment (§ 12940(j)).   FEHA prohibits "an employer . . . or any other person" from harassing an employee.  Cal. Gov't Code § 12940(h)(1).  However, it only prohibits "an employer" from engaging in improper discrimination.  <u>Id.</u> at § 12940(a).  Similarly, it prohibits "any employer . . . or person" to retaliate against an employee for objecting to such discrimination or harassment. <u>Id.</u> at § 12940(h).

1        The California Supreme Court has determined that under FEHA, employers,

2   supervisors and employees may be held liable for certain conduct, but that supervisors may not

3   be held liable personally for other conduct.  See Reno v. Baird, 18 Cal.4th 640, 663, 76

4   Cal.Rptr.2d 499, (1998); Jones v. Lodge at Torrey Pines Partnership, 42 Cal.4th 1158, 72

5   Cal.Rptr.3d 624 (Cal. 2008).  Specifically, the Court has found employers to be liable for

6   discrimination, as well as harassment and retaliation under certain circumstances.  However,

7   nonemployer individuals are not held liable for their role in retaliation or discrimination, but can

8   be held liable for harassment.  See Jones, 42 Cal.4th at 1162-63.

9        The California Supreme Court addressed the issue of liability for discrimination

10  and harassment under FEHA in Reno, 18 Cal. 4th 640.  In that case, the Court held that an while

11  employer is liable for unlawful discrimination, individuals (including supervisors) were not held

12  personally liable for that discrimination.  The Court reasoned that supervisors must make

13  management and personnel decisions, which might later be considered discriminatory, but that

14  are necessary for performing their job.  Whereas harassment type conduct is not necessary to a

15  supervisor's job performance.  In addition, holding supervisors personally liable for those

16  decisions "would do little to enhance the ability of victims of discrimination to recover monetary

17  damages, while it can reasonably be expected to severely impair the existence of supervisory

18  judgment."  Id. at 651–52.  Accordingly, a supervisor may be held liable for harassment but not

19  discrimination.

20       In Jones, 42 Cal.4th 1158, the Court addressed the issue of liability for retaliation

21  under FEHA. The Court determined that "Reno's rationale for not holding individuals personally

22  liable for discrimination applies equally to retaliation."  Id. at 1164.   The Court "conclude[d] that

23  the employer is liable for retaliation under section 12940, subdivision (h), but nonemployer

24  individuals are not personally liable for their role in that retaliation."  Id. at 1173.

25       Here, plaintiff's fourth cause of action is for "Retaliatory/Termination Under

26  FEHA" but no subsection is specifically identified.  Plaintiff appears to argue that her claim

1    could be considered harassment not retaliation, but that argument is unclear.  The conduct

2    plaintiff complains about all appear to be supervisory decisions, not personal harassing type of

3    behavior.  For example, plaintiff alleges defendant Glasco attended an employee meeting in

4    which the issue of the outstanding sexual allegations were addressed; that she thereafter received

5    a written warning from Glasco concerning her conduct; that she was then placed on

6    administrative leave; and ultimately was terminated.  These last two allegations are not

7    specifically tied to defendant Glasco, nor are other allegations relating to plaintiff's computer

8    being taken, being written up a second time, and having an unscheduled employee review.

9    However, even if all of these actions were taken by defendant Glasco, they are all decisions

10   relating to employment.  None of the conduct alleged are outside defendant Glasco's necessary

11   job performance.

12          Plaintiff argues the conduct alleged were not necessary employment type

13   decisions, but rather contributed to hostile work environment.  The Court in <u>Reno</u> defined the

14   behavior which could be considered harassment versus discriminatory,

15          Making a personnel decision is conduct of a type fundamentally
       different from the type of conduct that constitutes harassment.
16      Harassment claims are based on a type of conduct that is avoidable
       and unnecessary to job performance.  No supervisory employee
17      needs to use slurs or derogatory drawings, to physically interfere
       with freedom of movement, to engage in unwanted sexual
18      advances, etc. in order to carry out the legitimate objectives of
       personnel management.  Every supervisory employee can insulate
19      himself or herself from claims of harassment by refraining from
       such conduct.  An individual supervisory employee cannot,
20      however, refrain from engaging in the type of conduct which could
       later give rise to a discrimination claim.  Making personnel
21      decisions is an inherent and unavoidable part of the supervisory
       function.  Without making personnel decisions, a supervisory
22      employee simply cannot perform his or her job duties.

23   <u>Reno</u>, 18 Cal.4th at 646.

24          The type of conduct at issue in plaintiff's complaint fall within the later category

25   discussed in <u>Reno</u>.  Plaintiff has not alleged that defendant Glasco engaged in conduct similar to

26   using slurs or derogatory drawing, or physically interfering with her movement.  Plaintiff argues

the conduct complained of can be used to show a hostile work environment, citing <u>Robey v.</u> <u>McKesson</u>, 47 Cal.4th 686 (2009).  While she may be correct, the sufficiency of evidence to support a harassment claim is a separate issue.

Plaintiff does not claim that defendant Glasco harassed her.  Her claim is that defendant Glasco retaliated against her for opposing the sexual harassment defendant Sand was engaged in against several employees.  Pursuant to the California Supreme Court's decision in <u>Jones</u>, 42 Cal.4th 1158, a supervisory employee may not be held personally liable for retaliation. Therefore, the claims for retaliation under FEHA against defendant Glasco should be dismissed.

III.  **Conclusion**

The undersigned finds plaintiff cannot maintain an action against defendant Glasco as an individual supervisory employee for retaliation under either Title VII or FEHA.  As such, defendant Glasco's motion to dismiss should be granted and defendant Glasco dismissed from this action.

Accordingly, IT IS HEREBY ORDERED that:

1.      Defendants' motion to dismiss (Doc. 7) is granted;

2.      Defendant Glasco is dismissed from this action;

3.      This action shall proceed against defendants Shasta Community Health Center and Sand, who shall file an answer to the complaint within 30 days.

DATED:  March 12, 2014

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE